UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BEYOND COMICS INC. and GRAIG F. WEICH,

Plaintiffs,

                AMENDED COMPLAINT
v.
                & JURY DEMAND

KONAMI DIGITAL ENTERTAINMENT CO., LTD,
KONAMI DIGITALENTERTAINMENT, INC.,
NIHON AD SYSTEMS INC., UPPER DECK COMPANY,
4KIDS ENTERTAINMENT, INC., and 4KIDS
PRODUCTIONS,

08 CV 03524-JSR

Defendants.
-------------------------------------------------------------------X

   Plaintiffs BEYOND COMICS INC. and GRAIG F. WEICH, by and through their

attorneys, Kreindler & Kreindler  LLP respectfully alleges upon information and belief as

follows:


### NATURE OF THE ACTION

  1.  This action seeks damages based upon copyright infringement, trade dress

infringement, and unfair competition engaged in by Defendants.  Plaintiffs are the sole legal and

beneficial rights holders to a character titled "Ravedactyl," created in 1993.  Defendant

Nihon Ad System Inc. ("NAS") and Defendants Konami Digital Entertainment Co., Ltd. and

Konami Digital Entertainment, Inc. (Collectively "KONAMI") deliberately copied and

misappropriated the protected aspects of Plaintiffs' copyrighted and trademarked character

Ravedactyl in their character Elemental Hero Air Neos ("Hero Neos") in violation of the laws of

the United States and of the State of New York.  Hero Neos is the main and branded character in

the 25th booster set of the Yu-Gi-Oh! trading card system produced by defendant KONAMI.  It

is the sole character on the cover of every individual package of trading cards, trading card boxes, pop up displays, advertisements and commercials for the 25th booster set of Yu-Gi-Oh!. It also appears as the branded character on blister packs designed to sell prior booster sets; in the television program Yu-Gi-Oh! GX; and in the video games (i) Yu-Gi-Oh! GX: The Beginning of Destiny, (ii) Yu-Gi-Oh! World Championships 2008, and (iii) Yu-Gi-Oh! GX Tag Force 2.

2.      Defendant Upper Deck Company, LLC ("UPPER DECK") is the exclusive licensee to distribute the infringing Hero Neos and associated Yu-Gi-Oh! trading cards in North America, and, continues to willfully distribute infringing materials, even after it was asked to cease and desist, in violation of the laws of the United States and of the State of New York.

3.      Defendant 4Kids Entertainment, Inc. is an entertainment company who, along with its wholly-owned subsidiary, defendant 4Kids Productions (a television, film, music and home video production company), (collectively 4KIDS) released the television show Yu-Gi-Oh! GX in North America which contains the infringing character Hero Neos.  4KIDS has wilfully and deliberately continued to air episodes of Yu-Gi-Oh! GX with the infringing Hero Neos despite being asked to cease and desist.


**JURISDICTION AND VENUE**

4.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act"), section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the common law of the State of New York. Jurisdiction of the Court is invoked under 28 U.S.C. § 1331, as a civil action arising under the Constitution, laws, or treaties of the United States; under 28 U.S.C. §§ 1332 and 1338; and under this Court's supplemental jurisdiction under 28 U.S.C § 1367.

5.    Venue of this action is proper in this district pursuant to, 28 U.S.C. § 1391(b) in that, inter alia, the Plaintiffs' domicile and primary place of business is in the Southern District of New York.

## THE PARTIES

6.    Plaintiff BEYOND COMICS INC. is a New York Corporation, with its principal place of business in the City and State of New York.

7.    Plaintiff GRAIG F. WEICH is the C.E.O. of BEYOND COMICS INC. and resides in New York County.

8.    Defendant NIHON AD. SYSTEMS INC. is a foreign corporation that does substantial business in the United States.

9.    Defendant KONAMI DIGITAL ENTERTAINMENT CO., LTD.  is a foreign corporation traded on the New York Stock Exchange under the ticker KNM, and maintains offices in the City and State of New York.

10.    Defendant KONAMI DIGITAL ENTERTAINMENT, INC. is the designated representative of KONAMI DIGITAL ENTERTAINMENT CO., LTD,. in the United States and has a principal place of business in  Los Angeles, California.

11.    Defendant UPPER DECK COMPANY is a Nevada Corporation with a principal place of business in Carlsbad, California.

12.    Defendant 4KIDS ENTERTAINMENT, INC. is a New York corporation with its principal place of business in the City and State of New York City.   4Kids Entertainment, Inc. trades on the NASDAQ under ticker KIDE.

3

13.    Defendant 4KIDS PRODUCTIONS is a wholly owned subsidiary of defendant 4KIDS ENTERTAINMENT and has a principal place of business in the City and State of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL DEFENDANTS

14.    BEYOND COMICS is an award winning international comic book, movie and muti-media company established in 1998 by Plaintiff GRAIG F. WEICH, and maintains a website at www.BeyondComicsInc.com, and additionally at www.BeyondComics.tv.

15.    GRAIG F. WEICH ("WEICH") is the CEO of BEYOND COMICS and its primary artist and writer.

16.    BEYOND COMICS has two internationally famous franchise characters; Ravedactyl and Civilian Justice (now Code Name: Justice.)  Each of these characters is cross-promoted on their respective comic books, websites, live-action movies, and animated movies.

17.    Ravedactyl is a comic book character that features many unique and creative elements including: a distinctive aero-dynamic designed helmet uniquely pointed in the front and back; pointed chin guard; a yellow egg-like spot on the head; glowing blue eyes; a distinctive humanoid face; red smooth body armor outlined around the muscles in blue; solid feathered metallic wings which are unique in that they allow the back and front features to remain visible; hands unique for having sharp pointed features at each knuckle and every digit of each finger; and, sharp elbows. No other character has this look and combination of elements.

18.    Ravedactyl is a superhero who is able to travel through time. His costume was designed by aliens from outer-space.  He flies and has super powers that transform him from his previous form into Ravedactyl.

19.    Ravedactyl was created in 1989 and registered for copyright protection in 1993 which was approved in 1994.  Ravedactyl's first appearance was on the BEYOND COMICS' website www.BeyondComicsInc.com in 1998 where it has been prominently displayed since.

20.    BEYOND COMICS and WEICH applied for trademark protection for Ravedactyl in 2002, and it was approved for registration in 2006.

21.    Pre-promotion began in November 2001 for the BEYOND COMICS' website which featured both Ravedactyl and Civilian Justice.  Ravedactyl officially premiered in the international market in June 2002 at the International License Show, and then was officially published in September 2002 in the internationally best selling comic book Civilian Justice.

## FACTUAL ALLEGATIONS COMMON TO
## DEFENDANTS KONAMI AND NAS

22.    Yu-Gi-Oh! started as a manga (Japanese comic) in 1996.  It was created by Kazuki Takahashi ("Takahashi").  Running from 1996 to 2004, the Yu-Gi-Oh! manga was one of the most popular titles featured in Shueisha's weekly magazine *Shonen Jump* which has sold 23 million copies.

23.    KONAMI owns the rights to Yu-Gi-Oh! and ". . . has sold games and trading cards based on the comic series Yu-Gi-Oh! – also by author: Kazuki Takahashi since 1998." November 15, 2004 KONAMI Press Release.

24.    According to Forbes Magazine, in 2003 Yu-Gi-Oh! grossed $1,600,000,000 in sales.  Since 2003, the franchise has expanded into movies and American television and is now reported as grossing over $2,000,000,000 in sales worldwide.

25.    Yu-Gi-Oh! is in fact KONAMI's largest and most profitable franchise consisting of a trading card game system; video games; comic books; weekly magazine; television shows; action figures; and, an extensive line of related products including a license toy deal with Mattel Inc.

26.    Yu-Gi-Oh! is the world's leading trading card game played generally by children and young adults in at least 42 countries. Yu-Gi-Oh! cards have one of the highest value-added print jobs on the planet. Yu-Gi-Oh! cards are both collector's items and carefully produced to thwart counterfeiters, since some of the playing decks sell for hundreds of dollars.

27.    To prevail in a Yu-Gi-Oh! game, a player must possess the most powerful cards as designated by attributes assigned to each character. Powerful "rare" and even more powerful "ultra rare" cards are the key to winning.

28.    The cards are sold mainly in individual packets each containing 9 random Yu-Gi-Oh! cards. KONAMI restricts the production of the most sought after cards - hence rare and ultra rare - in order to entice consumers to purchase additional packs in order to obtain the desired card. A player may have to purchase up to 65 packs to obtain a single sought after ultra rare card.

29.    A new set of cards, referred to as a "booster set", comes out about every three to four months. Each booster set sells from 500,000,000 to 1,000,000,000 cards, and there have been 16 billion total Yu-Gi-Oh! cards sold.

30.    Yu-Gi-Oh! is also the most popular children's television show worldwide in 50 countries.

**KONAMI and NAS**

31.    Defendant NAS is responsible for the creation, development, and/or design of almost all Yu-Gi-Oh! characters and Yu-Gi-Oh! products made by KONAMI, it's largest client.

32.    KONAMI and NAS work very closely on all Yu-Gi-Oh! products including Yu-Gi-Oh! trading cards and animated programs.  NAS essentially functions as the KONAMI in-house design team for Yu-Gi-Oh!.  In fact, there is a cross-pollination of not just ideas and concepts, but of actual designers and creative talent.

33.    Naoyuki Kageyama ("Kageyama") (who also was one of the original illustrators for the manga Yu-Gi-Oh!) created the animated television show Yu-Gi-Oh! GX (known in Japan as Yu-Gi-Oh! Duel Monsters GX) for NAS.  Both Kageyama, and Yu-Gi-Oh! creator, Takahasi work with NAS designer Kenichi Hara – who oversees character design for Yu-Gi-Oh!.

34.    Defendants KONAMI and NAS' relationship extends past Yu-Gi-Oh!. They jointly create and/or produce numerous other anime including *Dragonaut -The Resonance*.

35.    NAS creates and produces all of the Yu-Gi-Oh! animated television shows: Yu-Gi-Oh!: Duel Monsters, Yu-Gi-Oh! GX, and Yu-Gi-Oh! 5Ds.  NAS developed and released "Yu-Gi-Oh! The Movie", and designs all of the Yu-Gi-Oh! trading cards.

36.    NAS also promotes, plans, manages and runs Yu-Gi-Oh! events world-wide, including the various Yu-Gi-Oh! championships.

37.    NAS produced the movie theater version of "Yu-Gi-Oh! Duel Monsters," with Shueisha Inc."

38.    Shueisha Inc., which publishes the weekly *Shonen Jump*, also has employed Takahashi and Kageyama.

7

## TAKAHASHI ADMITTED HERO NEOS
## IS DERIVED FROM AMERICAN COMIC HEROES

39.    In a 2001 Time Magazine interview, Yu-Gi-Oh! creator Takahashi, in response to

the question "Is it hard to come up with unique creatures for the cards, each with their own set of

strengths and weaknesses? I heard you've created something like 700," stated  "I stopped

counting, but I think it's more like 1,000, and, yeah, it's hard. I'm not sure how many more I've

got left in me."

40.    Takahashi came to the United States to attend the 2006 Comic Con in San Diego

where the Yu-Gi-Oh! world championships were being held; the same event where Ravedactyl

was prominently displayed.   It was also an event run by NAS.

41.    After the Comic Con, in an interview that appeared in the August 8, 2007 *Shonen*

*Jump*, Takahashi admitted the Elemental Heros and Neos was an attempt to incorporate

American Heroes.

Shonen:        Where did the idea of Elemental Heroes and Neos come from?

Takahashi:     Since most of the *Yu-Gi-Oh!* monsters back then were founded on fantasy,
               I wanted to introduce something more real, more life-size. That's when I
               thought of heroes in American comics. Based on the life-size presence of
               American comic book heroes, I created Elemental Heroes and Neos.

A copy of the interview in *Shonen Jump* is attached as exhibit A, as is appeared at
http://www.shonenjump.com/news/newsroom/index.php?id=20 on April 8, 2008.

42.    No other character in American comics resembles Ravedactyl, it is unique.

Elemental Hero Air Neos incorporates Ravedactyl's protected elements, and is a nearly identical

expression of the character.

Attached hereto as Exhibit B is a picture Ravedactyl in the Ravedactyl Stance as it appeared
yearly at the San Diego Comic Con, in advertisements, and in the Civilian Justice comic book –

8

next to – the infringing Hero Neos as it appears on the Yu-Gi-Oh trading card and in advertisements, along with examples of the individual packs and box sets.

### HERO NEOS, KONAMI and NAS

43.     The infringing Hero Neos was officially created by defendant NAS, under the direction of KONAMI and Takahashi, and overseen by NAS employee Kenichi Hara and Kageyama (the original Yu-Gi-Oh! illustrator and creator of Yu-Gi-Oh! GX).

44.     The unique Hero Neos character was licensed exclusively to KONAMI by defendant NAS for use in its Yu-Gi-Oh! product line; including the ultra-rare Hero Neos trading card; Yu-Gi-Oh! GX animated series; weekly *Shonen Jump* magazine; and, incorporated into video games (i) Yu-Gi-Oh! GX: The Beginning of Destiny for the Sony Playstation II; (ii) Yu-Gi-Oh! World Championships 2008 for the Nintendo DS; and, (iii) Yu-Gi-Oh! GX Tag Force 2 for the Sony Play Station portable.

45.     Hero Neos was chosen as the main and branded character in the 25th booster set of the Yu-Gi-Oh! trading card game, which consists of 60 individual cards, each featuring a different character.  The 25th booster set was released in Japan on November 16, 2006. The pre-release events for the English language release took place on February 24th and 25th, 2007, and it was released in the United States on March 15, 2007.

46.     As the branded character or "face" of the 25th booster set, Hero Neos is the sole character featured on the outer wrapper for each individual packet of cards, as well as, every display, pop up advertisement, trading card set box, and television/internet commercial.  In

addition, Hero Neos is the sole character used from the 25th booster pack to sell back inventory of prior Yu-Gi-Oh! booster sets.

47.    The uniqueness of Ravedactyl is evident in the fact that the infringing Hero Neos was the character chosen to be the face of the 25th booster set.

48.    In addition to being the face of the entire 25th booster set, Hero Neos is an ultra rare card, making it one of the most sought card in the 25th booster pack.

49.    Defendants KONAMI grossed over $633,333,000 in sales for the 25th booster set worldwide.  KONAMI is believed to have made in excess of $30,000,000 in gross profit from the 25th booster set.

50.    Defendant NAS is believed to have grossed $10,000,000 in gross profits from the 25th booster set, and related Yu-Gi-Oh! products, including the Yu-Gi-Oh! GX television show.

## FACTUAL ALLEGATIONS SPECIFIC TO
## DEFENDANT UPPER DECK

51.     Defendant UPPER DECK is the leading distributer of trading cards in North America, and along with Topps, distributes 90% of the trading cards in the North American market.

52.     Defendant UPPER DECK is the exclusive distributer of Yu-Gi-Oh! cards in North America.  Yu-Gi-Oh! trading cards are responsible for approximately $1,000,000,000 in sales in the U.S. every year, and comprises approximately 65% of UPPER DECK's U.S. sales; far outselling baseball cards, the next largest seller in the trading card market.

53.     Just as in other countries throughout the world, Hero Neos is the branded "face" of the 25th booster set in North America as well. UPPER DECK's gross profit for the 25th booster set is believed to be in excess of $20,000,000.

## FACTUAL ALLEGATIONS SPECIFIC TO DEFENDANTS
## 4KIDS ENTERTAINMENT AND 4KIDS PRODUCTIONS

54.     In the United States, Defendant 4KIDS ENTERTAINMENT through its wholly-owned subsidiary 4KIDS PRODUCTIONS (a television, film, music and home video production company) (collectively 4KIDS) dubbed into English and licenses the Yu-Gi-Oh! GX show to the Cartoon Network in the United States and YTV in Canada.

11

55.    In a June 20, 2006 article in Daily Variety titled LICENSING IMPACT

PLAYERS: Alfred R. Kahn, Chairman and CEO, stated that the "Pokemon and fellow Japanese

animation sensation Yu-Gi-Oh! pulled in $23 billion over 10 years for 4Kids".

56.    Defendants 4KIDS is believed to have made in excess of $10,000,000 in gross

profit from Yu-Gi-Oh! GX and the infringing Hero Neos.


### DIRECT ACCESS TO RAVEDACTYL BY KONAMI AND NAS

**A**    **KONAMI, NAS and BEYOND COMICS at Trade Shows and Conventions**

57.    Defendants KONAMI and Yu-Gi-Oh!, and Plaintiff BEYOND COMICS and

Ravedactyl, have appeared at the same convention or trade show on dozens of occasions.

58.    Some of the trade shows or conventions where both Yu-Gi-Oh! and Ravedactyl

appeared in full display from 2003 through 2007 include annually at; The Wizard World

Convention; The New York International Toy Fair & Toy Parade; The San Diego Comic

Convention; The Okatu Convention; The Big Apple Comic Convention (four times per year);

and, conventions held at Madison Square Garden and Jacob Javitz Center in New York.

59.    NAS also appears at many of these conventions and trade shows.  KONAMI and

NAS presented the U.S. Finals of the 2006 Yu-Gi-Oh! video game tournament at the Konami

booth (#4335) at Comic-Con in San Diego.  The BCI booth with Ravedactyl was at the exact

same event.

60.    Both Ravedactyl and Yu-Gi-Oh! were featured at the 2003 and 2007 Anime

Convention

61.     Yu-Gi-Oh! creator Takahashi also appeared at conventions and trade shows including the Comic Con in San Diego.  In the August 8, 2007 issue of *Shonen Jump*, (Exhibit A) Takahashi was asked:

Shonen:         What was your impression of Comic-Con?

Takahashi:      It was my first time visiting Comic-Con, and I was absolutely amazed to see the enormous collections of figures and toys! I didn't have much time to walk around. I don't think I would have been bored even if I had stayed there another week! [laughs]

62.     Ravedactyl also appeared at the 2006 and 2007 Comic Con: appearing in a continuous video loop played on a central monitor, 8' posters and 13" non-posable action figure

**B      KONAMI, NAS, BEYOND COMICS and MIPCOM**

63.     MIPCOM is the global leading event for buying, selling, financing and distributing entertainment content across all platforms, held in Cannes, France.  It provides the key decision-makers in the TV, film, digital and audiovisual content, production and distribution industry with the only market conference and networking forum to discover future trends and trade content rights on a global level.   Ravedactyl was featured at the 2003 MIPCOM, appearing in a continuous video loop played on a central monitor, 8' posters and 13" non-posable action figure in the traditional "Ravedactyl Stance."  Yu-Gi-Oh! was promoted by KONAMI at the same event.

64.     Ravedactyl was also shown at the 2004, 2005 and 2006 MIPCOM along with YU-Gi-Oh!.  NAS was actively involved in the 2005 MIPCOM, presenting their own products.

**C      BEYOND COMICS and KONAMI subsidiaries Takara and BBI**

65.      BEYOND COMICS has worked with Takara Co. (through its subsidiary Blue Box Toys also referred to as BBI), a KONAMI owned and controlled company, that makes the Japanese toy line Cool Girls also known as Cy Girls.

66.      In 2001 Takara's United States presence -- BBI -- brought the popular Cool Girls action figures to the United States under the name Cy Girls.  BEYOND COMICS was hired to create a promotional live action video of the Cy Girls.  In return for producing the Cy Girls live action video, BBI included the BEYOND COMICS website on all Cy Girls promotional products that BEYOND COMICS made for BBI.  Reciprocally, Cy Girls appeared, and still apears to this day, on the BEYOND COMICS website.

67.      Cy Girls was even advertized in the BEYOND COMICS award wining comic book Civilian Justice, appearing only a few pages away in the same book from the full page ad for Ravedactyl.

68.      According to the KONAMI DIGITAL ENTERTAINMENT CO., LTD,. 2005 6-k form filed with the Securities and Exchange Commission, "in July 2000, in response to a request from Takara, KONAMI accepted a third party allotment of new shares of Takara, and KONAMI has supported Takara until April 25, 2005."

69.      KONAMI was not just a passive parent company with respect to Cy Girls; KONAMI took control of Cy Girls and created and distributed the Cy Girls video game for gaming platforms like the Sony Play Station II.

70.      If fact, the live action promo Cy Girls produced by BEYOND COMICS, which contained the BEYOND COMICS website at the bottom throughout, was used in the negotiation

14

for the KONAMI video game rights.

71.     In 2002 BEYOND COMICS was hired again by BBI to create a poster for the Cy Girls action figures and Elite Force (their male line of action figures); drawing them as comic book characters and supplying BBI with live models dressed as these characters. The BEYOND COMICS website appeared on every poster displayed throughout the BBI 2002 Toy Fair.

72.     In 2002 Ravedactyl was prominently displayed in the showroom at the BBI /Takara Toy Fair attended by KONAMI and NAS, as well as the BBI 50th anniversary party also attended by representatives of KONAMI and NAS.

73.     Additionally, the BEYOND COMICS' preview comic book Civilian Justice (which featured three full page ads of Ravedactyl, one page of which shows Ravedactyl in the nearly identical pose copied by the defendants – the Ravedactyl Stance), was handed to every attendee at the 2002 BBI Toy Fair along with posters of Ravedactyl and other Ravedactyl hand-outs.

74.     At the same 2002 BBI Toy Fair, Ravedactyl PR also played on a continuous loop on multiple monitors in the BBI showroom. A prototype Ravedactyl action figure in the Ravedactyl Stance was also on display in the BBI showroom for attendees including KONAMI and NAS.


**Access in General**

75.     Ravedactyl appeared in the September 2002 internationally best selling comic book Civilian Justice. Civilian Justice distributed over 300,000 copies, with the majority of sales conducted internationally over the internet. It was distributed internationally by Diamond, the

same company that distributes Marvel comics and DC comics.

76.     Civilian Justice with Ravedactyl, is one of the most recognizable and best selling independent superhero comic books. A significant number of copies were sold in Japan.

**Ravedactyl Project Evolution and the BEYOND COMICS Website**

77.     Ravedactyl reached international acclaim with its short live action film Ravedactyl PR.  The short film starred Donald Faison from the NBC hit television show SCRUBS; Coolio the Grammy Award Winning Artist; and, David Prowse who played Darth Vader in the Star Wars trilogy of films.

78.     The stunt crew from the Sony and Warner Brothers Spider-Man films worked on the Ravedactyl short-film, and WEICH's appearance in the block-buster Spider-Man I and Spider Man III films was used to promote the BEYOND COMICS' website and Ravedactyl character world-wide.

79.     As an example of the buzz around Ravedactyl's acclaim, the BEYOND COMICS' website received over one million visitors in a single week after it was announced that Star Wars' David Prowse starred in Ravedactyl PR as the villain.

80.     Ravedactyl PR won the New York International Independent Film & Video Festival in 2003 and was shown at the 2003 New York International Film Festival held in New York at Madison Square Garden, Las Vegas, and  Los Angeles; the International Toy Fair and International License Show; and, at the 200 5th Ave Toy Building and on every major news channel including CBS, NBC, ABC, 20/20 & FOX Sports Net and WB11 News.

81.     Ravedactyl PR also screened at the 2003 Cannes Film Festival; December 2004 at

the Otaku Film Festival; and, Virginia Beach Film Festival in October 2004.

82.    More than 25 million visitors have viewed the BEYOND COMICS website.  The graphic representation of Ravedactyl is the first thing displayed on the website.  In fact, as a result of receiving hundreds of thousands of unique visitors to the website from Japan, in 2003, Ravedactyl's name was translated into Japanese and included on every product the name appears.

83.    Ravedactyl has appeared in thousands of related websites in Japan

**Magazines and Trade Publications**

84.    Ravedactyl has appeared in dozens of magazines and trade publications.  Wizard Magazine, the most significant industry publication for comic book artists and writers (as well as animation and trading cards) has featured Ravedactyl in issues 132, 133 and 150. Yu-Gi-Oh! and Yu-Gi-Oh! GX has many advertisements in the same issues.

85.    Other trade and industry publications featuring Ravedactyl include: License Magazine (which is distributed world wide); the Comic Book Buyer's Guide; and, Comics Journal Magazine.

86.    The issue of License Magazine which featured Ravedactyl was given out to over 300,000 attendees at the 2002 International Toy Fair and International License Show held at the Jacob Javits Center.  The same issue was also given out other Toy Fair locations as well as the the San Diego Comic Con (which is the largest in the world), and New York Comic Con.

87.    Wizard Magazine, printed an article with a full page color print of Ravedactyl and Civilian Justice stating "remember the name Graig F. Weich for he could be the future of comic books".

17

**Trade Shows and Conventions**

88.     Trade shows and comic conventions are the single most important mode of promotion, sale, and networking in the comic industry.  Eight foot enlarged posters of Ravedactyl have appeared at hundreds of Comic Book Conventions throughout the world including annually at the New York International Comic Convention; the Big Apple Convention; and, The Jacob Javits Center's International License Show and International Toy Fair.

89.     At the June 2002 International License Show, Ravedactyl was presented in (i) the live action short-film, (ii) the award wining comic book, (iii) the non-posable action-figure in the Ravedactyl Stance, and (iv) an 8 foot enlarged poster.  A copy of the License Magazine with a full color page of Ravedactyl was also handed out to every attendee.

90.     The Ravedactyl short-film, action figure, poster and comic book has also been featured annually at dozens of conventions including, from 2003-2007: The Wizard World Convention; The New York International Toy Fair & Toy Parade (which was broadcast live on many news channels world-wide); The San Diego Comic Convention; The Okatu Convention; The Big Apple Comic Convention; and, The Madison Square Garden Comic Convention.

91.     Ravedactyl was featured at the 2003 and 2007 Anime Conventions.


**The New York International License Show**

92.     Ravedactyl has been featured at the New York Licensing Show every year since June 2002.

93.     The Licensing Show is attended by nearly every children's franchise Licensee and Licensor.  In 2005 defendant 4Kids Entertainment unveiled licensing opportunities for the next

phase of Yu-Gi-Oh! franchise, Yu-Gi-Oh! GX, set a generation into the future, featuring new characters.

### Interviews and the Internet

94.     WEICH has shown and discussed his creation Ravedactyl in television and radio shows throughout the United States and internationally, including dozens of appearances in Japan.  Ravedactyl was featured in an interview on 20/20 ABC News; clips of Ravedactyl were also shown nationally on syndicated television stations Fox Sports Net and CBS.

95.     Ravedactyl's name is English, and the translated name in Japanese, accompanies Ravedactyl on nearly every thing it appears.

96.     Ravedactyl is ubiquitous on the internet in both the United States and Japan and has appeared in thousands of on-line reviews and interviews, including: www.ABCNews.com; www.SilverBulletComics.com; www.Action-Figure.com; www.ComicCon.com/Pulse; www.Mawopi.com; www.BlueTights.com; and, www.BigAppleCon.com, just to name a few.

### The Infringement

97.     The visual similarities between Ravedactyl and Hero Neos are substantial and compelling.  Some of the substantially similar protected elements include:

The Face and Helmet: of Hero Neos are substantially similar to that of Ravedactyl including the pointed front and back of the helmet, the yellow egg-like spot, the humanoid face, pointed chin guard, and red color.

Hands: Ravedactyl and Hero Neos have substantially similar unique hands having sharp pointed features at each knuckle and every digit of each finger.

Wings: The wings of Ravedactyl and Hero Neos are substantially similar

19

expressions, both having the unique feature that they allow both the back and front of the character to be viewed.

Costume, Color, and Overall Feel: There is a substantial similarity in the color combinations and overall look and feel of each character. Defendants have co-opted the Ravedactyl Stance, pointed elbows, red body coloring with muscles outlined in blue, glowing blue eyes, coloring on the neck, and a sharp protrusion from the back of the neck.

98.     The virtually identical protected features are even more prevalent in the 3D Ravedactyl (which appears from all angels on the BEYOND COMICS' website) and the anime Hero Neos which appears in television commercials, on You Tube, and in the Yu-Go-Oh! GX television program.

99.     The striking similarity between Ravedactyl and Hero Neos has caused actual confusion in the marketplace.

100.     The striking similarity mitigates any possibility that Hero Neos was independently created.

FIRST CLAIM FOR RELIEF
AGAINST DEFENDANTS KONAMI AND NAS
FOR INTENTIONAL COPYRIGHT INFRINGEMENT

101.     Plaintiffs BEYOND COMICS and WEICH are the sole legal and beneficial owner of Ravedactyl.

102.     Plaintiffs BEYOND COMICS and WEICH have complied in all respects with the Copyright Act, 17 U.S.C. § 101 et seq., and has registered the copyright in Ravedactyl with the United States Copyright Office.

103.     Defendants KONAMI and NAS had direct access to the Ravedactyl character.

104.    Access by Defendants KONAMI and NAS can also be inferred by virtue of Ravedactyl's broad international distribution and transmission in various media.

105.    Defendants KONAMI and NAS's unauthorized reproduction, distribution, license and/or public display of the infringing Hero Neos character, as described above, constitutes an infringement of Plaintiffs' copyright in Ravedactyl.

106.    Defendants KONAMI and NAS's actions, as alleged above, were undertaken willfully and with knowledge that they were copying protectable aspects of BEYOND COMICS' Ravedactyl and were infringing Plaintiffs' rights therein.

107.    Defendants KONAMI and NAS's actions constitute infringement of Plaintiffs' rights in violation of the Copyright Act, 17 U.S.C. § 501, et seq.

108.    By virtue of defendants KONAMI and NAS's use of the infringing material as the sole branded character for the 25th booster set of the Yu-Gi-Oh! trading card system and related products, Plaintiffs are entitled to all profits derived from the 25th booster set of the Yu-Gi-Oh! trading cards, and related products.

109.    By reason of Defendants KONAMI and NAS's actions, Plaintiffs seeks compensatory damaged in an amount to be determined at trial, but believed to be in excess of $40,000,000, as well as attorneys' fees, and costs.

21

## SECOND CLAIM FOR RELIEF AGAINST
### DEFENDANT UPPER DECK
### FOR INTENTIONAL COPYRIGHT INFRINGEMENT

110.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 108, and as if fully set forth herein.

111.    On or about December 12, 2007, defendant UPPER DECK was served with a cease and desist notice instructing it to stop selling, displaying, airing, or otherwise profiting from the infringing Hero Neos, and to return all infringing materials to Plaintiffs.

112.    Defendant UPPER DECK has refused to stop selling the infringed products, or return infringing materials which contains the infringing character Hero Neos to Plaintiffs.

113.    Defendant UPPER DECK  has continued to profit from the infringing Hero Neos.

114.    Consequently, Defendant UPPER DECK's continued actions are willful and with knowledge that they were copying and displaying protectable aspects of BEYOND COMICS' Ravedactyl and were infringing Plaintiffs' rights therein.

115.    Defendant UPPER DECK's actions constitute infringement of BEYOND COMICS' rights in violation of the Copyright Act, 17 U.S.C. § 501, et seq.

116.    By reason of Defendant UPPER DECK's actions, Plaintiffs seeks compensatory damaged in an amount to be determined at trial, but believed to be in excess of $20,000,000, as well as attorneys' fees, and costs.

THIRD CLAIM FOR RELIEF AGAINST
DEFENDANT 4KIDS
FOR INTENTIONAL COPYRIGHT INFRINGEMENT

117.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 108 as if
fully set forth herein.

118.    On or about December 12, 2007, defendant 4KIDS was served with a cease and
desist notice instructing it to stop selling, displaying, airing, or otherwise profiting from the
infringing Hero Neos, and to return all infringing materials to Plaintiffs.

119.    Defendant 4KIDS has refused to stop selling the infringed products, and return
infringing materials to Plaintiffs. which contains the infringing character Hero Neos.

120.    4KIDS has wilfully and deliberately continued to release episodes of Yu-Gi-Oh!
GX despite being ordered to cease and desist.  The infringing Hero Neos appears in numerous
episodes including: Turning the Page: Part II which aired most recently nationwide on March
15th.

121.    Defendant 4KIDS has continued to sell, display, air and profit from the infringing
Hero Neos.

122.    Consequently, Defendant 4KIDS continued actions are willful and with
knowledge that they were copying and displaying protectable aspects of BEYOND COMICS'
Ravedactyl and were infringing Plaintiffs' rights therein.

123.    Defendant's actions constitute infringement of BEYOND COMICS' rights in
violation of the Copyright Act, 17 U.S.C. § 501, et seq.

124.    By reason of Defendant's actions, Plaintiffs seeks compensatory damaged in an

23

amount to be determined at trial, but believed to be in excess of $10,000,000, as well as attorneys' fees, and costs.

## FOURTH CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS
## FOR COPYRIGHT INFRINGEMENT

125.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 108 as if fully set forth herein.

126.    Defendants' actions constitute infringement of BEYOND COMICS' rights in violation of the Copyright Act, 17 U.S.C. § 501, et seq.

127.    By reason of Defendants' actions, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be in excess of $70,000,000 as well as attorneys' fees, costs, and pre and post judgment interest.

## FIFTH CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS
## FOR TRADE DRESS INFRINGEMENT

128.    Plaintiffs repeats and realleges the allegations of paragraphs 1 through 108 as if fully set forth herein.

129.    Defendants' acts, as alleged above, are in violation of Plaintiffs' trade dress under § 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

130.    By reason of Defendants' actions, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be in excess of $70,000,000, as well as costs for this action.

24

SIXTH CLAIM FOR RELIEF
AGAINST ALL DEFENDANTS
FOR REVERSE CONFUSION

131.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 108 as if fully set forth herein.

132.     Because of Defendants' massive advertising and promotion for Yu-Gi-Oh! - which features infringing uses of BEYOND COMICS' Ravedactyl - consumers are likely to be confused into thinking that Ravedactyl is an infringing use of the Hero Neos character.

133.     As a result, BEYOND COMICS will incorrectly be perceived by the public as the infringer, rather than the aggrieved party, and its ability to market Ravedactyl which it has spent nearly fifteen years promoting will be destroyed.

134.     Defendants' acts, as alleged above, constitute reverse confusion, in violation of Plaintiffs' trade dress § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

135.     By reason of Defendants' actions, Plaintiffs seeks compensatory damaged in an amount to be determined at trial, but believed to be in excess of $70,000,000, as well as costs for this action.

SEVENTH CLAIM FOR RELIEF
AGAINST ALL DEFENDANTS
FOR UNFAIR COMPETITION

136.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 108 as if fully set forth herein.

137.     The elements of Ravedactyl that Defendants have misappropriated, are the product of Plaintiffs' skill, labor, expertise, talent and expenditures.

25

138.    Defendants have taken and utilized these elements with predatory intent, in an effort to reap for themselves the benefits of Plaintiffs' labor and expenditures. Defendants' actions, as alleged above, were undertaken willfully, purposefully and with the specific intent of usurping the benefits of Plaintiffs' labor and expenditures to their own commercial advantage.

139.    Defendants' actions, as alleged above, constitute unfair competition under the common law of New York.

140.    By reason of Defendants' actions, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be in excess of $70,000,000, as well as attorneys' fees, and costs.

**WHEREFORE**, Plaintiffs respectfully seek judgment on Plaintiffs' FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH and SEVENTH causes of action as follows:

(a) impounding, on such terms as it may deem reasonable, all copies of infringing products;

(b) awarding compensatory damages consisting of Plaintiffs' profits attributable to the infringement, in an amount to be determined at trial, but believed to be in excess of: FIRST cause of action $40,000,000; SECOND cause of action $20,000,000; THIRD cause of action $10,000,000; and the FOURTH, FIFTH, SIXTH and SEVENTH causes of action $70,000,000;

(c) awarding Plaintiffs all other damages suffered by reason of Defendants' wrongful acts, including reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505 and/or 15

26

U.S.C. § 1117; and,

(d) awarding Plaintiffs such other and further relief as this Court seems just and proper.

## JURY DEMAND

Plaintiffs demands a jury trial on all issues triable as of right.

Dated:  New York, New York
         May 1, 2008

                       Yours, etc.

                       KREINDLER & KREINDLER LLP

                       By: _James C. Kreindler_

                           James P. Kreindler (JK 7084)
                           Andrew J. Maloney
                           Richard M. Garbarini
                           100 Park Avenue
                           New York, NY  10017
                           (212) 687-8181
                           *Attorneys for Plaintiffs*